IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

KELLY SHERMAN and BEVERLY )
SHERMAN, )
 )
    Plaintiffs, )
 )
v. )      No. 16-02625
 )
STATE OF TENNESSEE; THE HUMANE )
SOCIETY OF THE UNITED STATES; )
FAYETTE COUNTY, TENNESSEE; )
JULIE McMILLAN, Individually; )
MICHAEL DUNAVANT, Individually )
and in his official capacity; )
MARK DAVIDSON, Individually and )
in his official capacity; )
ROBERT "CHIP" BURNS; JAMIE )
ESTEPA BURNS; JAMES ESTEPA; )
CINDY ESTEPA; UNITED STATES OF )
AMERICA; JOHN DOES A, B, and C; )
and JANE DOES A, B, and C, )
 )
    Defendants. )

---

ORDER

---

    This action arises from the seizure of Plaintiffs' horses. Before the Court are Defendants' seven Rule 12 motions to dismiss the Fourth Amended Complaint (the "Operative Complaint") of Plaintiffs Kelly Sherman and Beverly Sherman (the "Shermans").[1] Also before the Court are the Shermans' six motions to convert Defendants' Rule 12 motions into motions for

---

[1] Unless otherwise noted, references to "Rule __" are to the Federal Rules of Civil Procedure.

summary judgment and the Shermans' motion to stay the action, as to the United States, for time to exhaust administrative remedies.

First, Defendant Humane Society of the United States ("HSUS") filed a motion to dismiss under Rule 12(b)(6) or, alternatively, a motion for judgment on the pleadings under Rule 12(c) (the "HSUS Motion"). (ECF No. 57 at 528.[2]) The Shermans filed a motion to convert the HSUS Motion into a motion for summary judgment and, alternatively, responded to the HSUS Motion. (ECF No. 85 at 1280.) HSUS responded to the Shermans' motion to convert. (ECF No. 99 at 1679.) HSUS separately replied in support of the HSUS Motion. (ECF No. 97 at 1653.)

Second, Defendants Robert "Chip" Burns, Jamie Estepa Burns, James Estepa, and Cindy Estepa (collectively, the "Burns-Estepa Defendants") filed a motion to dismiss under Rule 12(b)(6) (the "Burns-Estepa Motion"). (ECF No. 58 at 563.) The Shermans filed a motion to convert the Burns-Estepa Motion into a motion for summary judgment and, alternatively, responded to the Burns-Estepa Motion. (ECF No. 84 at 1101.) The Burns-Estepa Defendants responded to the Shermans' motion to convert. (ECF No. 100 at 1690.) The Burns-Estepa Defendants separately

---

[2] Unless otherwise noted, all pin cites for record citations are to the "PageID" page number.

replied in support of the Burns-Estepa Motion. (ECF No. 98 at 1665.)

Third, Defendant State of Tennessee (the "State") filed a motion to dismiss under Rule 12(b)(1) and (6) (the "State Motion"). (ECF No. 63 at 757.) The Shermans filed a motion to convert the State Motion into a motion for summary judgment and, alternatively, responded to the State Motion. (ECF No. 82 at 883.) The State filed a response to the Shermans' motion to convert that also replies in support of the State Motion. (ECF No. 87 at 1584.)

Fourth, Defendants District Attorney General Michael Dunavant and Deputy District Attorney General Mark Davidson (the "AG Defendants") filed a motion to dismiss under Rule 12(b)(6) (the "AG Motion"). (ECF No. 65 at 769.) The Shermans filed a motion to convert the AG Motion into a motion for summary judgment and, alternatively, responded to the AG Motion. (ECF No. 86 at 1460.) The AG Defendants filed a response to the Shermans' motion to convert that also replies in support of the AG Motion. (ECF No. 93 at 1625.) The AG Defendants then filed an amended motion to dismiss under Rule 12(b)(6), which asserts an additional ground for dismissal and incorporates by reference the AG Motion and arguments in support (the "Amended AG Motion"). (ECF No. 108 at 1960.) The Shermans responded to the Amended AG Motion. (ECF No. 111 at 1986.) Because the Amended

3

AG Motion supersedes the AG Motion, the AG Motion is DENIED as moot. The Court construes the Shermans' motion to convert as a motion to convert the Amended AG Motion into a motion for summary judgment.

Fifth, Defendant Fayette County, Tennessee, filed a motion to dismiss under Rule 12(b)(6) (the "Fayette County Motion"). (ECF No. 77 at 848.) The Shermans filed a motion to convert the Fayette County Motion into a motion for summary judgment and, alternatively, responded to the Fayette County Motion. (ECF No. 83 at 1006.) Fayette County filed a reply in support of the Fayette County Motion that also responds to the Shermans' motion to convert. (ECF No. 88 at 1588.)

Sixth, Defendant Julie McMillan filed a motion to dismiss under Rule 12(b)(6) (the "McMillan Motion"). (ECF No. 95 at 1635.) The Shermans filed a motion to convert the McMillan Motion into a motion for summary judgment and, alternatively, responded to the McMillan Motion. (ECF No. 106 at 1713.) McMillan filed a reply in support of the McMillan Motion that also responds to the Shermans' motion to convert. (ECF No. 109 at 1974.)

Seventh, Defendant United States filed a motion to dismiss under Rule 12(b)(6) (the "U.S. Motion"). (ECF No. 96 at 1647.) The Shermans filed a motion to stay the action as to the United States for time to exhaust administrative remedies and,

alternatively, responded to the U.S. Motion. (ECF No. 107 at 1850.) The United States filed a reply in support of the U.S. Motion that also responds to the Shermans' motion to stay the action. (ECF No. 110 at 1981.)

For the following reasons, the HSUS Motion, the Burns-Estepa Motion, the State Motion, the Amended AG Motion, the Fayette County Motion, the McMillan Motion, and the U.S. Motion are GRANTED. The Shermans' motions to convert and the Shermans' motion to stay their action against the United States are DENIED.

## I. Background

### A. Relevant Facts

The following facts are taken from the Operative Complaint. The Shermans, both citizens and residents of Texas, are owners of two Tennessee Walking Horses. (ECF No. 55 ¶¶ 1-2, 16-17 at 505, 507.) Beverly Sherman purchased "Mucho Bueno" in 2010 for $175,000. (Id. ¶ 17 at 507.) Kelly Sherman purchased "Paroled In The Night" in 2011 for $12,500. (Id. ¶ 16 at 507.) The Shermans contracted with Whitter Stables in Fayette County, Tennessee, for the boarding, training, and care of their horses. (Id. ¶ 18 at 507.)

The Shermans allege that on March 1, 2012, federal and state agents arrested three horse trainers accused of abusing, or "soring," horses at Whitter Stables, including the Shermans'

horses. (Id. ¶ 20 at 507.) The Shermans allege that they were unaware of and did not approve of the abuse or soring of their horses. (Id. ¶ 19 at 507.)

The Shermans allege that, following the arrest, at McMillan's direction, state or county agents seized the Shermans' horses, turned them over to HSUS, and transported them with Robert Burns's assistance to a secret location in Rutherford County, Tennessee. (Id. ¶¶ 21, 24 at 507-08.) From there, McMillan, Fayette County, and the AG Defendants directed that the Shermans' horses be transported by HSUS and Robert Burns to land owned or controlled by Jamie Estepa Burns, James Estepa, and Cindy Estepa. (Id. ¶ 25 at 508.) The Shermans allege that Robert Burns and Jamie Estepa hid the horses from the Shermans and kept the horses under armed guard. (Id.)

The Shermans allege that on March 5, 2012, veterinarian Dr. John Bennett examined the Shermans' horses and found that the horses exhibited no signs of injury or soring. (Id. ¶¶ 22-23 at 508.) The Shermans allege that, from that point on, there was no justification for holding the horses as evidence in any criminal investigation.[3] (Id. ¶ 23 at 508.)

The Shermans allege that since March 1, 2012, Defendants, "acting in concert and under color of state law, have conspired

---

[3] The Operative Complaint does not allege where Dr. Bennett examined the horses.

to unlawfully hide, detain, and wrongfully convert the Plaintiffs' horses." (Id. ¶ 27 at 509.) The Shermans allege that, although Defendants knew the Shermans were the rightful owners of the horses, none of the Defendants provided the Shermans notice that their horses had been seized or information about available procedures to seek the return of the horses. (Id. ¶¶ 26, 33 at 509-10.) The Shermans allege that Defendants were required to provide such notice and information under state and federal law as well as by court order. (Id. ¶ 28, 33 at 509-10.) The Shermans allege that Defendants "conspired and acted in concert to use state law as a subterfuge to accomplish what they did not have the lawful authority to do under state and/or federal law." (Id. ¶ 30 at 509.) For example, the Shermans allege that McMillan, as an agent of the United States Department of Agriculture, knew that she had no authority under federal law to hold the Shermans' horses for more than 24 hours, so she directed that other Defendants transport and hold the horses. (Id. ¶¶ 31-32 at 510.)

The Operative Complaint asserts numerous claims against Defendants for violations of federal and state constitutional and statutory law. The Shermans allege violations of the Fifth and Fourteenth Amendments of the U.S. Constitution and violations of the Tennessee Constitution. The Shermans allege violations of the Horse Protection Act, 15 U.S.C. §§ 1821 et

seq., violations of Tennessee statutes governing enforcement of state cruelty-to-animals laws, and violations of Tennessee statutes governing criminal and civil property forfeiture. The Shermans primarily seek to vindicate their rights under 42 U.S.C. § 1983.

The Shermans' requested relief includes: (1) an injunction prohibiting all Defendants from interfering with the Shermans' title and quiet possession of their horses; and (2) compensatory and punitive damages, attorney's fees, and costs, payable by all Defendants except the State.[4] (Id. at 517.)

**B.   Procedural History**

On May 16, 2012, the Shermans filed this action in the Fayette County Circuit Court, styled a "Complaint for Possession or in Nature of Replevin" (the "Original Complaint"). (ECF No. 1-3 at 40-42.) The Shermans' Original Complaint named three defendants, including the State and HSUS, and sought to challenge the potential forfeiture of their horses pursuant to

---

[4] Although the Operative Complaint alleges that Defendants "have continued to unlawfully detain, hide and convert Plaintiffs' horses from . . . March 1, 2012 up to the present" and seeks the immediate return of the horses (ECF No. 55 ¶ 29 at 509, 517), the Shermans' responses to Defendants' motions to dismiss demonstrate that the horses were returned to the Shermans before they filed the Operative Complaint. In response to the U.S. Motion, the Shermans represent that their horses were detained until June 28, 2016, at which point they were returned to the Shermans. (ECF No. 107 at 1852, 1856.) Any relief requesting the return of the Shermans' horses is now moot.

Tenn. Code Ann. §§ 39-11-701 et seq. The Original Complaint
sought the return of the horses and alleged that the named
defendants had confiscated the horses without notice to the
Shermans and had held the horses in violation of Tennessee
statutes governing cruelty-to-animals enforcement.[5]

On May 22, 2012, the arrested horse trainers pled guilty in
the U.S. District Court for the Eastern District of Tennessee to
soring horses, including the Shermans' horses, in violation of
the Horse Protection Act. In re Tenn. Walking Horse Forfeiture
Litig., No. W2013-02804-COA-R3-CV, 2015 WL 1636704, at *1 (Tenn.
Ct. App. Apr. 8, 2015) ("Forfeiture Litig. I"). The trainers
pled guilty to state animal cruelty charges involving the same
horses on July 10, 2013. Id. Also on July 10, the State filed
an *ex parte* application for a forfeiture warrant for the
Shermans' horses. Id. The same day, the Fayette County Circuit
Court issued an *ex parte* forfeiture warrant and order placing
the horses in HSUS custody pending a final forfeiture
determination. Id.

---

[5] The Shermans represent to this Court that the issues
"originally presented" in the Original Complaint included
"whether Plaintiffs' guaranteed rights under Art. 1, § 8 of the
Tennessee Constitution and/or the Fifth and Fourteenth
Amendments to the United States Constitution were violated by
Defendants' seizure, taking, detention and conversion of
Plaintiffs' property without notice or due process of law and
without just compensation." (ECF No. 86 at 1465.) The Original
Complaint did not raise or identify those issues. (See ECF No.
1-3 at 40-42.)

On August 9, 2013, the State filed a complaint for judicial forfeiture in the Fayette County Circuit Court alleging that the Shermans and other affected horse owners had actual or constructive knowledge that the horse trainers at Whitter Stables would sore and abuse horses for training purposes. (ECF No. 65-2 at 796, 799-800.) The State asked that the horses be ordered forfeited and ownership awarded to HSUS. (Id. at 801.) The Shermans moved to dismiss the forfeiture complaint, arguing that the forfeiture warrant was not properly issued because the State failed to obtain it within five working days of March 1, 2012, as required by Tenn. Code Ann. § 39-11-707(c). Forfeiture Litig. I, 2015 WL 1636704, at *1. The court decided that the State, in taking possession of the horses, had violated procedural requirements in the forfeiture statutory scheme. Id. at *2. The court dismissed the forfeiture complaint. Id.

The State appealed, and on April 8, 2015, the Tennessee Court of Appeals reversed, finding that the Circuit Court had erred in granting the Shermans' motion to dismiss without first requiring the Shermans to establish standing to contest the forfeiture. Id. at *7. The Court of Appeals noted that the Shermans had "never filed a show cause motion pursuant to [Tenn. Code Ann. §] 39-11-709(d), which would have required the trial court to schedule a hearing on the issue of standing." Id. at *5. The Court of Appeals explained that the Shermans had filed

a motion to dismiss the forfeiture action, which did "not relieve [them] of their burden to prove standing to contest the forfeiture." Id. Thus, the Shermans had "put the proverbial cart before the proverbial horse." Id. (alterations and quotation marks omitted).

On remand, following a hearing on standing, on September 8, 2015, the Fayette County Circuit Court found that the Shermans had standing to contest the forfeiture action. (ECF No. 82-9 at 949.) On April 13, 2016, the court granted the Shermans' motion for summary judgment. (ECF No. 82-10 at 951.) The court opined that Tenn. Code Ann. § 39-11-707(c) required a forfeiture warrant to be issued within five working days of seizure and the provision of written notice to owners of seized property. (Id. ¶ 8 at 953.) The court found that the State had not satisfied those requirements. (Id. ¶ 9 at 953.) The court also opined that the State's placing the seized horses in HSUS custody violated Tenn. Code Ann. § 39-14-202(c). (Id. ¶ 10 at 953-54.) The court ordered the horses to be returned to the Shermans within 30 days. (Id. ¶ 12 at 954.) The State appealed, and that appeal is pending. In re Tenn. Walking Horse Forfeiture Litig., No. W2016-01000-COA-R3-CV (Tenn. Ct. App.) ("Forfeiture Litig. II").

In April 2014, the Shermans moved to amend their complaint in this action to add additional claims, including claims under

11

42 U.S.C. § 1983 for Fifth and Fourteenth Amendment federal due process violations, and to assert claims against additional defendants, including McMillan, the AG Defendants, and the Burns-Estepa Defendants. (ECF No. 65-3 at 803-05, 809-23.) After the Fayette County Circuit Court's April 13, 2016 order granting the Shermans summary judgment in the forfeiture action, that court granted the Shermans' motion to amend in this action on July 5, 2016. (ECF No. 1-3 at 64.) The Shermans filed their Third Amended Complaint on July 21, 2016, in substantially the same form as the Operative Complaint now before this Court, but without naming Fayette County as a defendant.[6] (See ECF No. 1-2 at 9-23.) On July 29, 2016, Defendants removed the action to this Court. (ECF No. 1 at 1.)

On September 27, 2016, the Shermans filed their Fourth Amended Complaint -- the Operative Complaint -- naming Fayette County as an additional defendant. (ECF No. 55 at 504.)

## II. Jurisdiction

The Court has a general grant of federal-question jurisdiction over the Shermans' federal-law claims under 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the Shermans' state-law claims under 28 U.S.C. § 1367 because they derive from a "common nucleus of operative fact." See 28 U.S.C.

---

[6] The Shermans had previously amended their Original Complaint but with minor changes. (See ECF No. 1-3 at 59-61.)

§ 1367; <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 725 (1966).

Notwithstanding those general grants of jurisdiction, the State, the AG Defendants, and the United States raise specific jurisdictional defenses that they argue warrant dismissal of the claims against them. "Where subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." <u>Moir v. Greater Cleveland Reg'l Transit Auth.</u>, 895 F.2d 266, 269 (6th Cir. 1990).

### A.    Eleventh Amendment Sovereign Immunity

The State moves to dismiss the Shermans' claims on the ground that the State is protected by Eleventh Amendment sovereign immunity. (ECF No. 63 at 757; ECF No. 63-1 at 762-65.) The State contends that it has not waived its sovereign immunity for federal civil rights suits or for state law claims in federal court. The State also contends that, notwithstanding waiver, it is not a "person" subject to suit under 42 U.S.C. § 1983. In response, although the Shermans agree that the State is not a "person" subject to suit under § 1983, they argue that, "[b]y adopting the Fifth and Fourteenth Amendments, the State consented to the obligations to provide remedies against the State as required in the Amendments." (ECF No. 82 at 896.)

The AG Defendants move to dismiss the Shermans' claims against them in their official capacities on the basis of Eleventh Amendment sovereign immunity. (ECF No. 65-1 at 792-94.) The AG Defendants also contend that state officials in their official capacities are not "person[s]" subject to suit under § 1983. The Shermans appear to disagree with the AG Defendants' arguments, but do not explain why. (See ECF No. 86 at 1476.)

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. "This jurisdictional bar applies regardless of the nature of the relief sought." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). "A sovereign's immunity may be waived, and . . . a State may consent to suit against it in federal court," but "the State's consent [must] be unequivocally expressed." Id. at 99. "[A]lthough Congress has power with respect to the rights protected by the Fourteenth Amendment to abrogate the Eleventh Amendment immunity," there must be "an unequivocal expression of congressional intent to overturn the

constitutionally guaranteed immunity of the several States."
Id. (quotation marks omitted).[7]

"Official-capacity suits" are "another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (quotation marks omitted). When a government official is sued in his or her official capacity, it is "*not* a suit against the official personally, for the real party in interest is the entity." Id. at 166. The suit instead is "to be treated as a suit against the entity." Id. Where the entity is a state, Eleventh Amendment sovereign immunity applies. See id. at 167. A "suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief," with the exception that a "suit challenging the constitutionality of a state official's action is not one against the State." Pennhurst, 465 U.S. at 102 (citing Ex parte Young, 209 U.S. 123 (1908)). However, in official-capacity suits, "a federal suit against state officials on the basis of

---

[7] A state may also waive its sovereign immunity by removing a lawsuit from state to federal court. Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 616 (2002). The holding in Lapides was limited to the "context of state-law claims, in respect to which the State has explicitly waived immunity from state-court proceedings." Id. at 617. As discussed below, the State has not explicitly waived its immunity, so that this ground for waiver does not apply.

state law contravenes the Eleventh Amendment" where no federal constitutional violation is alleged. <u>Id.</u> at 117.

"[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989). An exception to this rule is that "a state official in his or her official capacity, when sued for injunctive relief, [is] a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'"[8] <u>Id.</u> at 71 n.10 (quoting <u>Graham</u>, 473 U.S. at 167 n.14) (citing <u>Young</u>, 209 U.S. at 159-60).

Because the Shermans are Texas citizens, their suit against the State is a suit "against one of the United States by Citizens of another State." U.S. Const. amend. XI. The Eleventh Amendment directly bars the suit. "The State of Tennessee has not consented to any such suit expressly or by implication." <u>Berndt v. Tennessee</u>, 796 F.2d 879, 881 (6th Cir. 1986) (citing Tenn. Code Ann. § 20-13-102(a)). This general prohibition is codified under Tennessee law:

> No court in the state shall have any power, jurisdiction or authority to entertain any suit against the state, or against any officer of the state

---

[8] Although the scope of § 1983 is not jurisdictional per se, the Supreme Court has explained that, "in deciphering congressional intent as to the scope § 1983, the scope of the Eleventh Amendment is a consideration, and we decline to adopt a reading of § 1983 that disregards it." <u>Will</u>, 491 U.S. at 66-67.

> acting by authority of the state, with a view to reach the state, its treasury, funds or property, and all such suits shall be dismissed as to the state or such officers, on motion, plea or demurrer of the law officer of the state, or counsel employed for the state.

Tenn. Code Ann. § 20-13-102(a). Although the Tennessee legislature may "specifically provide[] to the contrary," the "state cannot be subject to litigation by individuals unless the words of the act are so plain, clear and unmistakable as to leave no doubt of the legislative intent that it should be done." Hise v. State, 968 S.W.2d 852, 853 (Tenn. Ct. App. 1998).

The Shermans cite no Tennessee statute providing that the State has waived its sovereign immunity or otherwise consented to suit in the context of this action. Instead, they argue that, "[b]y adopting the Fifth and Fourteenth Amendments, the State consented to the obligations to provide remedies against the State as required in the Amendments." (ECF No. 82 at 896.) The authorities the Shermans cite do not support that argument.

Citing Fitzpatrick v. Bitzer, 427 U.S. 445 (1976), the Shermans contend that, "[w]hen the State ratified the Fourteenth Amendment, it gave up part of its sovereign immunity to the extent that where 'any State [shall] deprive any person of . . . . property, without due process of law, a judicial remedy had to follow.'" (Id. (alteration in original).)

17

Fitzpatrick did not hold that a state's sovereign immunity is waived in any suit alleging a due process violation under the Fourteenth Amendment. It held that, pursuant to § 5 of the Fourteenth Amendment, "*Congress* may, in determining what is 'appropriate legislation' for the purpose of enforcing the provisions of the Fourteenth Amendment, provide for private suits against States or state officials which are constitutionally impermissible in other contexts." 427 U.S. at 456 (emphasis added). In Quern v. Jordan, the Supreme Court held that "§ 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States" and does not "abrogate the Eleventh Amendment immunity of the States." 440 U.S. 332, 345 (1979). None of the Tennessee statutes or authorities under which the Shermans seek relief against the State are statutes passed by Congress. Although § 1983 is a federal statute, even were the State a "person" under § 1983, Quern makes clear that the Shermans' consent argument as to that statute would not be well taken.

Citing DLX, Inc. v. Kentucky, 381 F.3d 511 (6th Cir. 2004), the Shermans contend that the Fifth and Fourteenth "Amendments require a remedy where there is a due process violation and place[] a condition on the exercise of a State's takings power." (ECF No. 82 at 896-97.) The Shermans contend that the "State must provide both a procedural remedy and just compensation."

18

(Id.) DLX held that, although "the Fifth Amendment's requirement of just compensation forces the states to provide a judicial remedy in their *own* courts," Eleventh Amendment sovereign immunity shields a state against a federal takings claim in *federal court*. 381 F.3d at 526-28. The Shermans' arguments are contrary to the holdings of the decisions the Shermans cite and are not well taken.

The AG Defendants are not shielded to the extent they are sued in their official capacities for injunctive relief for violations of federal law. See Will, 491 U.S. at 71 n.10. Eleventh Amendment sovereign immunity shields them to the extent they are sued in their official capacities for damages or for injunctive relief for purely state-law violations. The Shermans' arguments to the contrary are relevant insofar as the AG Defendants are sued in their *individual* capacities, but the Shermans do not explain why the AG Defendants should not be immune to suit in their *official* capacities. (See generally ECF No. 86 at 1473-76.)

The State Motion seeking dismissal is GRANTED. To the extent the AG Defendants seek dismissal of the Shermans' claims against them in their official capacities for damages or for injunctive relief for purely state-law violations, the Amended AG Motion is GRANTED.

### B.  Failure to Exhaust

On January 20, 2017, the United States moved to substitute itself as Defendant in place of McMillan as to Count III.B.1 of the Operative Complaint, which asserts violations of Tennessee statutes.  (ECF No. 94 at 1632-33.)  The United States certified that, at all relevant times, McMillan was acting within the scope of her employment as a federal employee and that, pursuant to 28 U.S.C. § 2679(d)(2), the United States is the proper defendant for any state-law claims.  The Shermans did not oppose the motion.  The Court granted the motion.  (ECF No. 102 at 1706.)

The United States moves to dismiss any state-law claims asserted in III.B.1 of the Operative Complaint.  (ECF No. 96 at 1650-51.)  The United States argues that it has sovereign immunity and may be sued only to the extent that Congress has waived that immunity by federal statute.  The United States argues that the only federal law, if any, that waives sovereign immunity for the Shermans' state-law claims is the Federal Tort Claims Act (the "FTCA").  The United States contends that, because the Shermans failed to exhaust their administrative remedies pursuant to the FTCA for state-law claims before filing this action, the Court must dismiss any state-law claims against the United States for lack of jurisdiction.

The Shermans argue that their "claims concerning the violations of Tennessee forfeiture law are evidence of their constitutional claims," which they seek to vindicate under § 1983 or <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), for which there are no exhaustion requirements. (ECF No. 107 at 1858, 1860.) The Shermans also respond that, to the extent they must proceed under the FTCA, any exhaustion requirement should be excused. The Shermans argue that they originally sued McMillan individually, not the United States, and that "it is pure sophistry to claim an 'exhaustion of remedies defense' when the government affirmatively volunteered to step into her shoes." (<u>Id.</u> at 1857.) Alternatively, the Shermans move to stay this action as to the United States so that they may first exhaust their administrative remedies. (<u>Id.</u> at 1858.)

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." <u>FDIC v. Meyer</u>, 510 U.S. 471, 475 (1994). "A waiver of sovereign immunity cannot be implied but must be unequivocally expressed." <u>United States v. Mitchell</u>, 445 U.S. 535, 538 (1980) (quotation marks omitted). Absent a waiver, a federal court lacks jurisdiction over a suit against the United States. <u>See</u> <u>Meyer</u>, 510 U.S. at 475 ("Sovereign immunity is jurisdictional in nature."); <u>see also</u> <u>United States v. Sherwood</u>, 312 U.S. 584, 586 (1941) ("[T]he

terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.").

"The FTCA waives the sovereign immunity of the United States with respect to tort claims, providing that '[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances.'" Singleton v. United States, 277 F.3d 864, 872 (6th Cir. 2002) (alteration in original) (quoting 28 U.S.C. § 2674) overruled on other grounds by Hawver v. United States, 808 F.3d 693 (6th Cir. 2015). "An action shall not be instituted upon a claim against the United States" pursuant to the FTCA "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency." 28 U.S.C. § 2675(a). "The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." McNeil v. United States, 508 U.S. 106, 113 (1993) (discussing 28 U.S.C. § 2675(a)). Failure to exhaust administrative remedies in this context deprives the federal court of jurisdiction.[9] See Blakely v. United States,

---

[9] In United States v. Kwai Fun Wong, the Supreme Court held that the FTCA's time bars are nonjurisdictional and subject to equitable tolling. 135 S. Ct. 1625, 1638 (2015). That decision, however, did not disturb Sixth Circuit authority providing that failure to exhaust administrative remedies deprives a federal court of jurisdiction.

276 F.3d 853, 864 (6th Cir. 2002); <u>Holt v. Morgan</u>, 79 F. App'x 139, 141 (6th Cir. 2003).

In the Operative Complaint, the only claims asserted against the United States are for violations of state law. The Shermans do not plausibly dispute the United States' contention that the only federal law, if any, waiving sovereign immunity and under which the Shermans may sue the United States for state-law violations is the FTCA. The Shermans were therefore required to exhaust administrative remedies pursuant to the FTCA before bringing state-law claims against the United States. The Shermans do not dispute that they failed to exhaust their administrative remedies against the United States before filing this action. Because the Shermans failed to exhaust, the Court lacks jurisdiction over any claims against the United States. Dismissal of those claims is warranted.

The Shermans' arguments to the contrary are unpersuasive. The Shermans argue that <u>Bivens</u> or § 1983 claims are not subject to exhaustion requirements. They argue that they have stated § 1983 or <u>Bivens</u> claims against McMillan and that the alleged state-law violations are "evidence" of those federal-law claims.[10] The Shermans argue that, because they originally sued McMillan, not the United States, and because the United States

---

[10] As discussed below, the Operative Complaint makes no mention of <u>Bivens</u>.

substituted itself in place of McMillan for the part of the Operative Complaint asserting state-law violations, the Shermans can sue the United States for those state-law violations under § 1983 or Bivens.

Whatever the merits of any federal-law claims against McMillan, which the Court addresses below, the Shermans cite no authority that a Bivens claim or § 1983 claim can be asserted against the United States. Cf. Bivens, 403 U.S. at 397 (recognizing cause of action against federal officers); Will, 491 U.S. 71 (holding that a state is not a "person" under § 1983). The Shermans cite no authority supporting their "substitution" theory of liability.

The Shermans argue that the FTCA exhaustion requirement should be excused in this case because they originally sued McMillan (who is not protected by sovereign immunity), rather than the United States. That argument is also unpersuasive. The Shermans did not oppose the United States' motion to substitute itself as Defendant in place of McMillan for any state-law claims asserted in III.B.1 of the Operative Complaint. Even if the Shermans could show good cause for their failure to exhaust, they would not cure a jurisdictional defect. Because the Court lacks jurisdiction over any claims against the United

States, there is no basis to stay this action to allow the Shermans to exhaust their administrative remedies.[11]

The Shermans' motion to stay their action against the United States is DENIED. The U.S. Motion seeking dismissal of the claims against the United States is GRANTED.

### III. The Shermans' Motions to Convert

The Shermans have filed six motions to convert Defendants' Rule 12 motions (not including the U.S. Motion) to motions for summary judgment.[12] The Shermans contend that Defendants have "refused to provide information concerning the seizure, whereabouts of the the Shermans' horses, or the identity of the persons and/or governmental agencies involved in the unlawful actions." (ECF No. 85 at 1281.)[13] The Shermans contend that "Defendants' refusal to provide pertinent information to Plaintiffs prevents Plaintiffs from being able to more fully

---

[11] Even if <u>Kwai Fun Wong</u> could be read to hold that failure to exhaust does not deprive a federal court of jurisdiction over a claim brought pursuant to the FTCA, there would be no basis to stay this action because, as discussed below, Count III.B.1 fails to state a claim on which relief can be granted.

[12] The Shermans' motion to convert the State Motion into a motion for summary judgment is DENIED because the Court lacks jurisdiction over the Shermans' claims against the State.

[13] For instance, the Shermans assert that in 2012 they were informed that Fayette County officials had *not* participated in the seizure of their horses, but that in 2016, after the horses had been ordered released, the State asserted for the first time that Fayette County officials had, in fact, seized the horses. (ECF No. 85 at 1281.)

respond to the Defendants' Rule 12 motions." (Id.) The Shermans have submitted numerous documents and exhibits in support of their motions to convert and their responses to Defendants' motions to dismiss, and the Shermans ask the Court to consider that evidence. The Shermans argue that, if the Court considers that evidence, Defendants' motions to dismiss should be converted to motions for summary judgment, and the Shermans ask that the Court either (1) deny Defendants' motions or (2) defer ruling and provide the Shermans opportunity for discovery with the option to amend their pleadings following discovery. (Id. at 1281-82.)

Defendants oppose the Shermans' motions to convert. Representative of Defendants' arguments generally, HSUS argues that discovery is not required for the Court to rule on Rule 12 motions to dismiss. (ECF No. 99 at 1682.) HSUS contends that the Court must assume that all well pled facts in the Operative Complaint are true, making it unnecessary to consider any additional material offered by the Shermans that merely supports the pleadings. HSUS argues that the Shermans' requested relief is not in response to extraneous material introduced by Defendants, but "is an attempt to take advantage of extraneous material that [the Shermans], themselves, filed -- not for any valid purpose -- but instead, to draw attention away from the

deficiencies in the allegations in the [Operative] Complaint." (Id. at 1684.)

Rule 12(d) provides that, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). If so treated, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Id. "[F]ederal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366 (3d ed. 2004).

"The purpose of a motion to dismiss is to test the sufficiency of the pleading before the Court." Dillard v. Rubin Lublin Suarez Serrano, LLC, No. 12-2182-STA-dkv, 2013 WL 12043557, at *5 (W.D. Tenn. Mar. 1, 2013). Courts in this Circuit have denied plaintiffs' motions to convert when it is unnecessary to consider matters outside the pleadings in deciding a motion to dismiss. See, e.g., Rider v. HSBC Mortg. Corp. (USA), No. 2:12-cv-925, 2013 WL 3901519, at *2 (S.D. Ohio July 29, 2013); see also Yaldo v. Homeward Residential, Inc.,

622 F. App'x 514, 516 (6th Cir. 2015) ("[Plaintiff's] argument that her inclusion of exhibits in her response to the defendants' motions to dismiss should have converted them into motions for summary judgment is not well taken, because a complaint that cannot survive a motion to dismiss would not survive a motion for summary judgment.").

The Court may, and does, consider some of the material submitted by the parties *not* constituting "matters outside the pleadings" in addressing Defendants' Rule 12 motions. See Fed. R. Civ. P. 12(d). The Shermans, however, do not offer a persuasive reason why the Court should consider any matters outside the pleadings that they have presented. All of the material in the documents and exhibits the Shermans have submitted concerns events occurring before the Shermans' filing of the Operative Complaint.[14] The Shermans were able to fashion their pleadings based on the matters addressed by these documents. Defendants' motions to dismiss challenge the legal sufficiency of the pleadings. Any consideration of matters outside the pleadings presented by the Shermans' documents and exhibits is unnecessary in evaluating the pleadings' legal sufficiency.

---

[14] The only document the Shermans offer that post-dates the Operative Complaint (although it concerns matters pre-dating the Operative Complaint) is a declaration by their own counsel. (ECF No. 82-2 at 907.)

The Shermans' argument that they cannot adequately respond to Defendants' motions to dismiss without further discovery lacks merit because it assumes the pleadings are legally sufficient. Defendants' motions challenge that assumption. On a motion to dismiss, a court tests the sufficiency of the pleadings to determine whether discovery is warranted. See Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). The Shermans' argument that they need discovery to respond to Defendants' motions to dismiss is, in essence, an argument that discovery is needed to determine whether discovery is warranted. The Shermans cite no authority that a plaintiff may avoid a Rule 12 motion by unilaterally presenting matters outside the pleadings. Courts have converted motions to dismiss into motions for summary judgment where the pleadings are first determined to be legally sufficient. See, e.g., Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C., 989 F. Supp. 838, 841 (E.D. Mich. 1997) ("Because the allegations contained in the amended complaint taken as true are sufficient to state a claim, and because the affidavits and other materials submitted by the parties are vital to the discussion *infra,* this court will decide this motion as a motion for summary judgment pursuant to [Rule 56]."), aff'd, 176 F.3d 904 (6th Cir. 1999).

The authorities the Shermans cite are not to the contrary. In _Yeary v. Goodwill Industries-Knoxville, Inc._, the Court of Appeals reviewed the district court's disposition as one under Rule 12(b)(6) _rather than_ under Rule 56 because, "[a]lthough the district court certainly considered matters outside the pleadings, those matters simply filled in the contours and details of the plaintiff's complaint, and added nothing new," and the district court did not rely on affidavits containing material that exceeded the scope of the complaint. 107 F.3d 443, 445 (6th Cir. 1997). In _Wysocki v. International Business Machine Corp._, the Court of Appeals affirmed a district court's decision to convert a motion to dismiss into a motion for summary judgment where the Rule 12 movant -- not the non-movant -- presented matters outside the pleadings attached to its reply and gave the non-movant adequate notice. 607 F.3d 1102, 1104-05 (6th Cir. 2010).

The Court will not consider matters outside the pleadings that would require Defendants' motions to dismiss to be converted into motions for summary judgment. The Shermans' motions to convert are DENIED.

## IV. Standard of Review

In addressing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must construe the complaint in the light most favorable to the plaintiff and accept all

well-pled factual allegations as true.  League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007).  A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the complaint."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 (2007).

This standard requires more than bare assertions of legal conclusions.  Tackett v. M&G Polymers, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009).  "[A] formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555. To survive a motion to dismiss, a complaint must contain sufficient facts "to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Twombly, 550 U.S. at 556).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (citation omitted).  A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery."  Id. at 678-79.  To survive a motion to dismiss, a complaint must "contain either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal

theory." D'Ambrosio v. Marino, 747 F.3d 378, 383 (6th Cir. 2014) (quotation marks omitted).

In addressing a motion to dismiss under Rule 12(b)(6), a district court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008).

"After the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "[T]he legal standards for adjudicating Rule 12(b)(6) and Rule 12(c) motions are the same . . . ." Lindsay v. Yates, 498 F.3d 434, 437 n.5 (6th Cir. 2007).

## V. Analysis

### A. Claims Asserted and Threshold Challenges

The Operative Complaint alleges three "causes of action": (1) due process violations; (2) violations of Tennessee statutes; and (3) violations of federal statutes and regulations. Defendants contend that the claims asserted by those "causes of action" can be summarily dismissed.

### 1. Due Process Violations

In Section III.A of the Operative Complaint, the Shermans allege that Defendants, "all acting individually and in concert

32

with each other, and under color of state law, have intentionally and purposefully violated Plaintiffs' procedural and substantive due process rights and, as a result, have deprived and are continuing to deprive Plaintiffs of the property rights they possess in their horses." (ECF No. 55 ¶ 39 at 511.) The Shermans allege that Defendants' conduct has violated their rights under the Fifth Amendment, the Fourteenth Amendment, and provisions of the Tennessee Constitution. The Shermans seek relief under 42 U.S.C. § 1983. (Id. ¶¶ 34, 36-42 at 510-12.)

The AG Defendants contend that the Operative Complaint fails to state a § 1983 claim for federal substantive due process violations. The AG Defendants argue that the protections of substantive due process have mainly been limited to matters related to marriage, family, procreation, and the right to bodily integrity, and that the Supreme Court has been reluctant to expand those protections to other matters. (ECF No. 65-1 at 788-89.) The Shermans do not cite any authority or plausibly contend that the Operative Complaint states a federal substantive due process violation as a result of the seizure of their horses. (See generally ECF No. 86 at 1460-78.) Deprivations of personal property, particularly in the context of property forfeiture, typically implicate, if anything, procedural due process, not substantive due process. See

Langston v. Charter Twp. of Redford, 623 F. App'x 749, 758-59 (6th Cir. 2015) (declining to recognize substantive due process claim in administrative forfeiture context). To the extent the Operative Complaint purports to assert a § 1983 claim for federal substantive due process violations, Defendants' motions to dismiss are GRANTED.

The parties dispute whether the Operative Complaint articulates a claim under § 1983 for an unlawful taking without just compensation, in violation of the Fifth Amendment. The Operative Complaint does not purport to allege an inverse-condemnation action, but it does allege the confiscation of the Shermans' property and a violation of the Fifth Amendment. The AG Defendants contend that any takings claim must fail because seizing property pursuant to criminal laws or subjected to *in rem* forfeiture proceedings is not a taking for which an owner is entitled to compensation, even where the owner is innocent of wrongdoing. (ECF No. 65-1 at 789-90.) Fayette County, HSUS, and the Burns-Estepa Defendants contend that, to state a Fifth Amendment takings claim for which relief can be granted, a plaintiff must plead that the state does not have an adequate inverse-condemnation law. They contend that the Shermans have failed to do so. (ECF No. 57-1 at 542 n.9; ECF No. 58-1 at 585 n.11; ECF No. 77-1 at 856.) The Shermans do not substantively respond to Defendants' arguments, but argue summarily, without

citing authority, that their "horses could not be constitutionally taken without 'just compensation.'" (ECF No. 83 at 1021; ECF No. 86 at 1474.)

Generally, Fifth Amendment takings claims are not cognizable where property is seized pursuant to forfeiture laws, even where an owner is innocent of wrongdoing. See, e.g., Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 683-86 (1974); AmeriSource Corp. v. United States, 525 F.3d 1149, 1152-57 (Fed. Cir. 2008). The Sixth Circuit has held that, to state a Fifth Amendment takings claim, "the plaintiff must show 'that the inverse condemnation procedure is unavailable or inadequate.'" G.M. Eng'rs & Assocs., Inc. v. W. Bloomfield Twp., 922 F.2d 328, 331 (6th Cir. 1990) (quoting Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 197 (1985)). The Shermans agree that the seizure about which they complain was pursuant to Tennessee's forfeiture laws. The Operative Complaint does not allege that Tennessee's inverse-condemnation procedure is unavailable or inadequate. To the extent the Operative Complaint purports to assert a § 1983 claim for violation of the Fifth Amendment's Takings Clause, Defendants' motions to dismiss are GRANTED.

The AG Defendants contend that the Operative Complaint fails to state a § 1983 claim for Fourth Amendment violations. (ECF No. 65-1 at 789.) Although the Operative Complaint

explicitly alleges violations of the Fifth and Fourteenth Amendments, it makes no mention of the Fourth Amendment. The Shermans' responses focus on alleged violations of the Fifth and Fourteenth Amendments, not the Fourth Amendment. To the extent the Operative Complaint purports to assert a § 1983 claim for Fourth Amendment violations, Defendants' motions to dismiss are GRANTED.

The AG Defendants and Fayette County contend that, to the extent the Shermans seek relief under § 1983 for violations of state law, any such claim must fail. (ECF No. 65-1 at 792; ECF No. 77-1 at 860 n.4.) The Shermans' filings are unclear about whether the Shermans purport to predicate a § 1983 claim on state-law violations. In the Operative Complaint, the Shermans seek relief under § 1983 for violations of the Tennessee Constitution. (ECF No. 55 ¶ 39 at 511.) In response to the Fayette County Motion, the Shermans argue that the "doctrines of due process and just compensation have long been embodied in . . . the Tennessee Constitution, . . . codified in the State's own statutes, and confirmed by the State's highest court." (ECF No. 83 at 1021.) In response to the U.S. Motion, however, the Shermans characterize their allegations of state-law violations as "direct factual evidence of the violations of due process under the United States Constitution." (ECF No. 107 at 1860.)

Although alleged noncompliance with state-law procedures can be relevant in assessing a federal due process claim, § 1983 is "limited to deprivations of federal statutory and constitutional rights" and "does not cover official conduct that allegedly violates state law" alone. Michael v. Ghee, 498 F.3d 372, 375 (6th Cir. 2007) (quotation marks omitted). To the extent the Operative Complaint purports to assert a § 1983 claim for solely state-law violations, Defendants' motions to dismiss are GRANTED.

The Shermans' only § 1983 claim that warrants further discussion is their claim for federal procedural due process violations, which will be addressed below.

## 2. Tennessee Statutory Violations

In Section III.B.1 of the Operative Complaint, the Shermans allege numerous violations of Tennessee statutes, including Tenn. Code Ann. §§ 39-14-210(a) et seq., governing enforcement of cruelty-to-animals laws, and Tenn. Code Ann. §§ 39-11-701 et seq., governing criminal and civil property forfeiture. (ECF No. 55 ¶¶ 43-51 at 512-15.) The Operative Complaint alleges that "Defendants, acting individually and in concert, violated" those state statutes and, "[a]s a direct and proximate result of these violations, the Plaintiffs have suffered harm and are entitled to equitable relief and damages." (Id. ¶¶ 50-51 at 514.)

Defendants contend that, to the extent the Operative Complaint purports to assert independent state-law claims for the statutory violations, or an independent state-law claim arising under the Tennessee Constitution, any such claims fail. (E.g., ECF No. 77-1 at 859-61.) Fayette County points out that the Tennessee Code provides as follows: "In order for legislation enacted by the general assembly to create or confer a private right of action, the legislation must contain express language creating or conferring the right." Tenn. Code Ann. § 1-3-119(a). The Code further provides: "In the absence of the express language required by subsection (a), no court of this state . . . shall construe or interpret a statute to impliedly create or confer a private right of action except as otherwise provided in this section." Tenn. Code Ann. § 1-3-119(b). "Tennessee does not recognize a private cause of action for violations of the Tennessee Constitution." Cline v. Rogers, 87 F.3d 176, 179 (6th Cir. 1996) (citing Lee v. Ladd, 834 S.W.2d 323 (Tenn. Ct. App. 1992)).

Fayette County argues that, although the Shermans allege violations of Tenn. Code Ann. § 39-14-210(a) et seq., none of those provisions creates or confers a right of action for an alleged violation. Addressing Tennessee's property-forfeiture statutes, Fayette County argues that, although those statutes allow an owner or interest-holder to petition a court for the

return of seized property, no provision creates or confers a right of action for damages for an alleged violation of the forfeiture statutes. Fayette County also contends that any claim by the Shermans seeking the return of their horses is now moot because their horses have been returned. (ECF No. 77-1 at 860.)

The Shermans do not disagree with any of Defendants' contentions. Indeed, the Shermans represent (in response to the U.S. Motion) that their allegations of "violations of the Tennessee forfeiture law are not the direct claims being made" and are instead "factual evidence" of federal due process violations. The Shermans' representations confirm that the Tennessee statutory violations asserted in Section III.B.1 of the Operative Complaint are not independent claims for relief. To the extent the Operative Complaint purports to assert independent claims for relief for violations of Tenn. Code Ann. §§ 39-14-210(a) et seq., §§ 39-11-701 et seq., or the Tennessee Constitution, Defendants' motions to dismiss are GRANTED.

### 3. Violations of the Horse Protection Act

In Section III.B.2 of the Operative Complaint, the Shermans allege violations of the Horse Protection Act and related regulations, specifically 15 U.S.C. § 1825(e)(1) and 9 C.F.R. § 11.4, by Defendant McMillan and various John and Jane Doe

defendants (the "Horse Protection Act Claim").  (Id. ¶¶ 52-56 at 515-16.)

McMillan and the Shermans agree that the Horse Protection Act does not create or confer a right of action for damages for the specific violations about which the Shermans complain.  (See ECF No. 95 at 1643; ECF No. 106 at 1730.)  McMillan contends that the Shermans may seek relief for her alleged violation of the Horse Protection Act, if at all, only under Bivens.  (ECF No. 95 at 1639, 1641-45.)  The Operative Complaint does not mention Bivens (although it cites other legal grounds for relief), but the Shermans argue in response that the Operative Complaint can be construed to assert a Bivens claim.  (ECF No. 106 at 1729-31.)

Although the Supreme Court has recognized the availability of Bivens claims in limited circumstances, it has "consistently refused to extend Bivens liability to any new context or new category of defendants."  Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 68 (2001); see, e.g., Minneci v. Pollard, 565 U.S. 118, 120 (2012) (refusing to extend Bivens liability to employees working in privately operated federal prisons); Wilkie v. Robbins, 551 U.S. 537, 541 (2007) (refusing to extend Bivens liability to federal employees accused of harassment and intimidation aimed at extracting easement across private property); Meyer, 510 U.S. at 473 (refusing to extend Bivens liability to federal agencies);

Schweiker v. Chilicky, 487 U.S. 412, 414 (1988) (refusing to extend _Bivens_ liability to government employees for alleged improper denial of Social Security benefits); United States v. Stanley, 483 U.S. 669, 684 (1987) (refusing to extend _Bivens_ liability for injuries arising out of or incident to military service); Bush v. Lucas, 462 U.S. 367, 368 (1983) (refusing to extend _Bivens_ liability to superiors for alleged violations of federal employees' First Amendment rights); Chappell v. Wallace, 462 U.S. 296, 297 (1983) (refusing to extend _Bivens_ liability to superior officers for enlisted military personnel injured in military service).

Against this weight of authority, the Shermans cite no cases and offer no plausible reason why a federal employee's violation of the Horse Protection Act, specifically the decision to detain another's horse for longer than 24 hours, should give rise to a _Bivens_ claim. The McMillan Motion seeking dismissal of the Horse Protection Act Claim is GRANTED.

**B.    § 1983 Due Process Claim**

The Operative Complaint alleges that Defendants, "acting in concert and under color of state law, have conspired to unlawfully hide, detain, and wrongfully convert the Plaintiffs' horses." Specifically, the Shermans allege that, following the seizure of their horses, the Shermans were not provided (1) notice of the seizure or (2) information about available

41

procedures to obtain the return of their horses. (ECF No. 55 ¶¶ 26-27, 33, 40 at 509-11.) Although not properly pled, in response to the AG Motion, the Shermans allege that "(3) no pre-deprivation due process hearing was provided; (4) no post-deprivation hearing was provided; (5) the only hearing was an *in rem* action, brought sixteen months after the horses were taken, in which the State sought their forfeiture; (6) the horses were unlawfully placed in the custody of a foreign corporation in violation of statute; and (7) no official accusation, complaint, charge, presentment or indictment alleging any crime or wrongdoing were ever filed against Plaintiffs." (ECF No. 86 at 1475-76.)

Defendants generally contend that the Shermans' due process claim fails because adequate state remedies exist for the harms about which the Shermans complain. Specifically, the AG Defendants argue that, not only do specific state procedures exist for a property owner to contest the seizure and forfeiture of property, but that the Shermans have failed to use those procedures. (ECF No. 65-1 at 787-88.) The AG Defendants further argue that a predeprivation hearing is not required where property is seized for criminal-investigation purposes. (ECF No. 93 at 1628.)

"The Due Process Clause of the Fourteenth Amendment provides that no state shall 'deprive any person of life,

liberty, or property, without due process of law.'" Puckett v. Lexington-Fayette Urban Cnty. Gov't, 833 F.3d 590, 604 (6th Cir. 2016) (quoting U.S. Const. amend. XIV, § 1). "At its core, procedural due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner." Id. at 606 (quotation marks omitted). "[T]he Due Process Clause is flexible and provides different levels of protection depending on the particular situation and circumstances of the deprivation." Id.

The Shermans allege a deprivation of personal property, their horses. "To establish a procedural due process claim, a plaintiff must show (1) the existence of a protected property interest at issue, (2) a deprivation of that protected property interest, and (3) that he or she was not afforded adequate procedures." Paterek v. Village of Armada, 801 F.3d 630, 649 (6th Cir. 2015). At issue here is whether the Shermans' pleadings plausibly allege the third element.

In this Circuit, "a § 1983 plaintiff can prevail on a procedural due process claim by demonstrating that the property deprivation resulted from either: (1) an established state procedure that itself violates due process rights, or (2) a 'random and unauthorized act' causing a loss for which available state remedies would not adequately compensate the plaintiff." Warren v. City of Athens, 411 F.3d 697, 709 (6th Cir. 2005)

(quoting Macene v. MJW, Inc., 951 F.2d 700, 706 (6th Cir. 1991)).

To afford adequate procedures, "[p]rocedural due process generally requires that the state provide a person with notice and an opportunity to be heard before depriving that person of a property . . . interest." Warren, 411 F.3d at 708. "Under certain circumstances, however, a state may satisfy due process without providing notice or an opportunity to be heard before the deprivation." Daily Servs., LLC v. Valentino, 756 F.3d 893, 904 (6th Cir. 2014). That is because "predeprivation process is only required in cases where predeprivation process is feasible." Fox v. Van Oosterum, 176 F.3d 342, 348 (6th Cir. 1999).

For example, in cases of property forfeiture, "pre-seizure hearings are not constitutionally mandated, as long as interested persons receive notice and a timely post-seizure opportunity to be heard prior to forfeiture." Ross v. Duggan, 402 F.3d 575, 584 (6th Cir. 2004) (emphasis removed). Also, "[i]n cases involving 'random and unauthorized' deprivations of property" by a government employee, "pre-deprivation process is impossible and, therefore, adequate post-deprivation state procedures comport with the constitutional requirements of due process." Macene, 951 F.2d at 706 (discussing Parratt v. Taylor, 451 U.S. 527 (1981)). That is true even where an

"intentional deprivation of property by a state employee" is alleged. <u>Hudson v. Palmer</u>, 468 U.S. 517, 533 (1984). Under <u>Parratt</u> and its progeny, "random and unauthorized" acts by government employees are those that the state cannot "anticipate and control in advance." <u>Id.</u>

Under the <u>Parratt</u> doctrine, "[c]ourts may dismiss a procedural due process claim if the state provides an adequate postdeprivation remedy and (1) the deprivation was unpredictable or random; (2) predeprivation process was impossible or impracticable; and (3) the state actor was not authorized to take the action that deprived the plaintiff of property or liberty."[15] <u>Daily Servs.</u>, 756 F.3d at 907 (quotation marks omitted). "In this context, 'unauthorized' means that the official in question did not have the power or authority to effect the deprivation, not that the act was contrary to law." <u>Warren</u>, 411 F.3d at 709-10. A plaintiff alleging "an established state procedure that itself violates due process rights" does "not need to demonstrate the inadequacy of state remedies." <u>Id.</u> at 709. But for a plaintiff alleging random and unauthorized acts, the "<u>Parratt</u> rule creates the requirement that plaintiffs in such circumstances must prove that the post-

---

[15] <u>Parratt</u> was overruled in part by <u>Daniels v. Williams</u>, which held that "a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property" does not amount to a violation of the Due Process Clause. 474 U.S. 327, 328 (1986). <u>Parratt</u> otherwise remains binding precedent.

deprivation process afforded by the state is somehow inadequate to right the wrong at issue." Macene, 951 F.2d at 706. "The failure to so plead in this circuit, therefore, renders a section 1983 complaint subject to dismissal." Watts v. Burkhart, 854 F.2d 839, 843 (6th Cir. 1988).

The Shermans' due process claim is largely premised on allegedly unlawful conduct by Defendants. They complain of the "unlawful seizure, confiscation, detention and conversion" of their horses and allege that Defendants' actions "exceeded their lawful authority under state and/or federal law." (ECF No. 55 ¶¶ 12, 35 at 506, 510.) The Shermans allege that HSUS violated Tenn. Code Ann. § 39-14-210(f) by taking custody of the Shermans' horses without being a "humane society chartered by the state" and that Defendants, "[a]lthough legally required to do so," provided the Shermans "absolutely no notice" of the seizure "as required by state statute and federal regulation." (Id. ¶¶ 33, 44-45 at 510, 512.) The Shermans allege that Defendants "conspired and acted in concert to use state law as a subterfuge to accomplish what they did not have the lawful authority to do under state and/or federal law." (Id. ¶ 30 at 509.)

The Shermans agree that the Tennessee statutes they cite provided constitutional protections and maintain that, "[h]ad they been followed by Defendants as the statutes mandate, the

46

Plaintiffs could have received procedural . . . due process protections." (ECF No. 86 at 1475.) By alleging that Defendants "conspired" or intentionally violated various statutes and acted without lawful authority, the Shermans have alleged random and unauthorized deprivations of property by government employees. See Parratt, 451 U.S. at 541; Macene, 951 F.2d at 706. Hudson makes clear that "when deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply 'impracticable' since the state cannot know when such deprivations will occur." 468 U.S. at 533.

The Shermans' contentions establish that the deprivation of which they complain was "unpredictable or random," "predeprivation process was impossible or impracticable," and Defendants were "not authorized to take the action[s] that deprived" the Shermans of their horses. Daily Servs., 756 F.3d at 907. Under the Parratt rule, the Shermans were required to plead and prove that the "post-deprivation process afforded by the state is somehow inadequate." Macene, 951 F.2d at 706. The Operative Complaint does not allege that available state-law remedies are inadequate to compensate the Shermans for harm caused by Defendants' allegedly unlawful conduct. Because of that pleading failure, the Shermans' due process claim

predicated on Defendants' random and unauthorized acts must be dismissed. <u>Watts</u>, 854 F.2d at 843.

To the extent the Shermans rely on <u>State v. Sprunger</u>, 458 S.W.3d 482 (Tenn. 2015), to support their contention that they have adequately pled due process violations, that reliance is misplaced. <u>Sprunger</u> invoked the Fifth and Fourteenth Amendments of the U.S. Constitution and a provision of the Tennessee Constitution in discussing the importance of procedural compliance with Tennessee's forfeiture statutes. <u>Id.</u> at 493-94. <u>Sprunger</u> explained that the "State's exercise of police powers in effecting the forfeiture of citizens' property requires black letter compliance to procedural rules intended to safeguard the due process rights of citizens." <u>Id.</u> at 499 (quotation marks omitted). <u>Sprunger</u> addressed a challenge to a forfeiture proceeding under *Tennessee* law, not a § 1983 claim for due process violations under *federal* law. Nothing in <u>Sprunger</u> warrants departure from the <u>Parratt</u> rule, which requires dismissal of a federal due process claim premised on government actors' unlawful noncompliance with procedural rules where the plaintiff fails to allege that state remedies are inadequate for those due process violations.

Although not properly pled, some of the Shermans' arguments suggest that certain established state procedures themselves, rather than Defendants' random and unauthorized acts, violated

the Shermans' due process rights. The Shermans complain that, in the wake of the seizure of their horses, no information was provided about available procedures to obtain the return of the horses. To the extent that resulted from the proper application of Tennessee law rather than Defendants' random and unauthorized acts in disregard of Tennessee law, the Supreme Court has held that, when government officials seize property for a criminal investigation, "individualized notice of state-law remedies . . . established by published, generally available state statutes and case law" is not required. City of W. Covina v. Perkins, 525 U.S. 234, 240-41 (1999). Tennessee's statutory forfeiture scheme affords owners of property numerous mechanisms by which they may challenge the seizure and threatened forfeiture of property. See Hill v. City of Memphis, No. W2013-02307-COA-R3-CV, 2014 WL 7426636, at *9 (Tenn. Ct. App. Dec. 30, 2014) (discussing provisions in Tenn. Code Ann. §§ 39-11-701 et seq.). Defendants were not constitutionally required to provide the Shermans information about available remedies outlined in the Tennessee Code.

The Shermans also complain that no predeprivation hearing was provided before their horses were seized, but the Sixth Circuit has held that "pre-seizure hearings are not constitutionally mandated" where a "timely post-seizure opportunity to be heard prior to forfeiture" is provided. Ross,

49

402 F.3d at 584.  The Shermans were provided such a hearing in the form of the State's forfeiture action.  The Shermans contested that forfeiture action, prevailed before the Fayette County Circuit Court, and secured the return of their horses.[16]

The Shermans also complain that their horses were seized and subjected to forfeiture proceedings although the Shermans were never officially charged with any crime or wrongdoing. (ECF No. 86 at 1476 & n.9.)  The Shermans suggest that, by permitting forfeiture actions where the property owner is innocent of wrongdoing, Tennessee's forfeiture scheme violates their due process rights.

The Fayette County Circuit Court found the Shermans to be "innocent owners" because they "were not criminally charged or convicted in connection with the abuse of their horses" (ECF No. 82-10 ¶ 5 at 952).  That finding does not mean that subjecting the Shermans' horses to a forfeiture action violated the federal constitution.  In <u>Bennis v. Michigan</u>, the Supreme Court explained that its decisions had long held that "an owner's interest in property may be forfeited by reason of the use to which the property is put even though the owner did not know

_____

[16] Although the State's appeal in that action is pending before the Tennessee Court of Appeals, the possibility of reversal does not implicate the issues in this case.  The Shermans' § 1983 claims in this action are premised on Defendants' conduct in attempting to secure the forfeiture of the Shermans' horses, not on any alleged due process violations by Tennessee courts in adjudicating the State's forfeiture action.

that it was to be put to such use." 516 U.S. 442, 443, 446 (1996) (affirming Michigan Supreme Court decision holding that "Michigan's failure to provide an innocent-owner defense was without constitutional consequence" where trial court ordered forfeiture of automobile jointly owned by claimant and her convicted husband with no offset for claimant's interest in the forfeited property (quotation marks omitted)). The Shermans' innocent-owner argument likewise fails. The result is no different, even where a property owner successfully challenges a forfeiture action so long as the seizure that prompted the forfeiture action was justified. See Ross, 402 F.3d at 586 ("[T]he initial seizures were constitutionally justified upon 'probable cause,' as long as the owners received reasonable notice and a fair post-impoundment-but-pre-forfeiture opportunity to contest ultimate forfeiture.")

In its order granting the Shermans summary judgment in the forfeiture action, the Fayette County Circuit Court noted that it was undisputed that (1) the "Shermans hired Jackie McConnell . . . to 'train' Paroled In The Night and Mucho Bueno"; (2) "McConnell and others working for him pled guilty in both state and federal court to abusing horses, including Paroled In The Night and Mucho Bueno"; and (3) "the Shermans' horses were seized from McConnell's barn on March 1, 2012, in connection with McConnell's arrest on state animal cruelty

charges." (ECF No. 82-10 ¶ 2 at 951-52.) Although the Operative Complaint alleges that a veterinarian's examination of the Shermans' horses four days after their seizure disclosed no signs of injury or soring (see ECF No. 55 ¶¶ 22-23 at 508), the Operative Complaint's allegations do not challenge the undisputed findings of the Fayette County Circuit Court. The Shermans allege that "there was no justification for further holding the the Shermans' horses as 'evidence' in any criminal investigation" following the veterinarian's examination (id. ¶ 23 at 508), but the Shermans cite no authority establishing the unlawfulness of their horses' seizure or continued detention where the State's investigation culminated in the Whitter Stables trainers' pleading guilty to soring the Shermans' horses. The Shermans do not plausibly allege that the seizure and detention of their horses violated due process.

The Shermans also complain that the State's forfeiture action was brought 16 months after the horses were seized and did not allow for a damages counterclaim. (ECF No. 86 at 1476 & n.9.) The AG Defendants contend, however, that the Shermans failed to avail themselves of available statutory procedural mechanisms through which they could have challenged the continued detention and potential forfeiture of their horses more expeditiously. (ECF No. 65-1 at 787-88.)

When the Shermans' horses were seized, Tennessee law provided: "If after thirty (30) days from the date of the seizure of the property . . . no administrative or civil forfeiture action has been initiated, the owner . . . may petition the chancery court in the judicial district where the seizure occurred for return of the property." Tenn. Code Ann. § 39-11-709(b).[17] That statute provided that, if no "action is commended within thirty (30) days after the appropriate official has been served with the petition for return of property . . . , then the chancery court shall order the property be returned." Id. Rather than file a petition pursuant to § 39-11-709(b) in the chancery court, the Shermans filed a replevin action in the circuit court. (ECF No. 1-3 at 40-42.) The Tennessee Code expressly proscribed the filing of a replevin action as a means of contesting seizure for forfeiture. Tenn. Code Ann. § 39-11-709(a). In challenging the seizure and potential forfeiture of their horses, the Shermans filed an action that the Tennessee Code proscribes and failed to file an action in the manner the Code authorizes.

Tennessee law also provided that, following the State's filing of a forfeiture action, "a claimant may file a motion with the court in which the action is pending for the state to show cause why the property . . . should not be returned."

---

[17] Section 39-11-709(b) has since been amended.

Tenn. Code Ann. § 39-11-709(d).  That statute provided that within 21 days of the filing of such a motion, the court "shall conduct a hearing on the motion" and, if the claimant can establish standing, "the court shall order that the property be returned" if "the court finds that the state has failed to prove a probability of success on the merits of the forfeiture action."  Id.  The Shermans "never filed a show cause motion" pursuant to § 39-11-709(d), prompting the Tennessee Court of Appeals to reverse the initial dismissal of the forfeiture action.  Forfeiture Litig. I, 2015 WL 1636704, at *7.

Had the Shermans availed themselves of the remedial provisions provided by Tennessee's forfeiture laws, the Shermans might have secured the return of their horses more expeditiously, mitigating any decline in value of their horses and the loss of use about which they now complain.  The Shermans quote Logan v. Zimmerman Brush Co. for the proposition that "the State may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement."  455 U.S. 422, 434 (1982).  Logan immediately qualified that proposition, however, explaining, "This is not to suggest, of course, that the State must consider the merits of the claim when the claimant fails to comply with a reasonable procedural requirement."  Id. at 434 n.7.  The Shermans' failure to comply with available procedural means to contest the

continued detention of their horses precludes any due process challenge to the statutory forfeiture scheme itself.

Because the Shermans have failed to plead and prove that state remedies were inadequate for any due process violations resulting from Defendants' allegedly random and unlawful conduct, and because the Shermans do not plausibly allege that state procedures themselves were constitutionally defective, the Shermans' due process claim fails to state a claim on which relief can be granted.

Because the Operative Complaint does not state any claim on which relief can be granted, the HSUS Motion, the Burns-Estepa Motion, the Amended AG Motion, the Fayette County Motion, and the McMillan Motion are GRANTED.

### C.  Other Grounds for Dismissal

Defendants raise other grounds for dismissal, including failure to plead conspiracy or acting in concert, time bar, laches, waiver, absolute immunity, qualified immunity, and related defenses.  It is unnecessary to address those defenses because the Operative Complaint warrants dismissal in its entirety for the reasons addressed in this order.

## VI. Conclusion

For the foregoing reasons, the HSUS Motion, the Burns-Estepa Motion, the State Motion, the Amended AG Motion, the Fayette County Motion, the McMillan Motion, and the U.S. Motion

are GRANTED.  The Shermans' motions to convert and the Shermans'

motion to stay their action against the United States are

DENIED.  This action is DISMISSED.[18]


So ordered this 14th day of June, 2017.


/s/ Samuel H. Mays, Jr
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

---

[18] The parties' joint motion to amend the scheduling order and to extend discovery deadlines (ECF No. 112 at 1997) is DENIED as moot.